

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY | * | CIVIL ACTION |
| VERSUS | * | NO. 00-225 |
| SCOTT G. JONES, ESQ., ET AL | * | SECTION "F" |

ORDER AND REASONS

Before the Court are the defendants' motion to disqualify plaintiff's counsel and the plaintiff's motion for summary judgment on the issue of liability. For the reasons that follow, both motions are denied.

Background

The plaintiff, Scottsdale Insurance Company, filed suit against its former attorney, Scott Jones, the law firm of Hulse & Wanek, and their insurer, asserting that while Jones was its attorney, he allowed Scottsdale's cause of action for medical malpractice to prescribe and that Jones concealed his negligence from Scottsdale.

The case arises out of two earlier lawsuits. The first suit

DATE OF ENTRY
OCT 2 2000



was filed in September 1992 by Van Lauren McCahill against the owners of an apartment building and their insurer, Scottsdale, for injuries sustained when McCahill fell off the balcony of an apartment located in the building (the McCahill matter). On June 24, 1994, Jones, the defendant here, was retained as the owners' and Scottsdale's counsel in the McCahill matter. In his investigation of the case, Jones discovered information suggesting that Scottsdale should pursue a separate medical malpractice action in connection with McCahill's treatment at Charity Hospital after the accident.[1] Subsequently, McCahill's personal injury suit was settled for $600,000. At the July 21, 1994, settlement conference, Jones discussed the possibility of pursuing a medical malpractice case against Charity with McCahill and his attorney.

On April 5, 1995, McCahill and Scottsdale entered into a "Litigation Agreement," wherein they agreed to file a claim for medical malpractice, which would become the second lawsuit underlying the instant suit. Jones assumed the role of lead counsel. He filed the medical malpractice petition before the Patients Compensation Fund (PCF) on April 12, 1995. After learning that the PCF is not the appropriate entity with which to file a medical malpractice action against Charity, a state medical facility, Jones forwarded a petition invoking a medical review

---

[1] McCahill was treated at Charity periodically beginning on February 29, 1992, and ending on April 10, 1994, when McCahill's left leg below the knee was amputated.

2

panel to the Division of Administration for filing on May 26, 1995.

During the pendency of the medical review panel proceeding, Charity filed an exception of prescription, arguing that by the time the suit was filed, more than one year had passed since the incident causing McCahill's injury (his treatment had begun on February 29, 1992, and ended on April 10, 1994). Jones prepared an opposition to the exception, maintaining that McCahill did not discover the malpractice until July 21, 1994, the date of the settlement in the McCahill matter. The exception was never heard. On October 23, 1996, the medical review panel issued its decision that Charity had not deviated from the standard of care.

Thereafter, on November 26, 1996, Jones filed a suit for medical malpractice in Civil District Court for the Parish of Orleans on behalf of Scottsdale and McCahill. Charity filed another exception of prescription on July 16, 1999, in which it now argued that McCahill had knowledge of his substandard treatment at Charity on April 10, 1994, at the latest, "although probably earlier." Jones prepared another opposition, this time including an affidavit in which McCahill stated that he was unaware of any malpractice until July 21, 1994, the date of the settlement conference in the McCahill matter. This affidavit was executed after McCahill apparently made statements indicating that he knew of Charity's malpractice possibly as early as 1992.

3

In October 1999, Jones withdrew as counsel for McCahill and Scottsdale on the ground that a conflict had arisen between them. Mark Ross was substituted as counsel for Scottsdale.

Thereafter, Ross put Jones and Hulse & Wanek on notice of a potential legal malpractice claim against them. Ross then filed an amended response to Charity's exception of prescription, withdrawing Scottsdale's opposition.[2] On January 21, 2000, the state court granted Charity's exception of prescription. That same day, McCahill executed an agreement, which Ross drafted, whereby he assigned his rights in any claim for legal malpractice against Jones and Hulse & Wanek in exchange for $15,000.

Scottsdale filed this action for legal malpractice on January 25, 2000. The defendants now move to disqualify plaintiff's counsel, and the plaintiff now moves for summary judgment on the issue of liability. Before deciding the plaintiff's motion for summary judgment, the Court first considers the defendants' motion to disqualify plaintiff's counsel.

I. The Defendants' Motion to Disqualify Plaintiff's Counsel

A.

Motions to disqualify are substantive motions which are

---

[2] In its motion for summary judgment, Scottsdale maintains that it withdrew its opposition because it considered any opposition based on McCahill's affidavit to be both "legally inadvisable and professionally unethical."

4

determined by applying standards developed under federal law. <u>In re Dresser Indus., Inc.</u>, 972 F.2d 540 (5th Cir. 1992). In this Circuit, "disqualification cases are governed by state and national ethical standards adopted by the court." <u>In re American Airlines</u>, 972 F.2d 605, 610 (5th Cir. 1992). Accordingly, the Court must determine whether disqualification is warranted in light of four relevant ethical canons: (1) the Local Rules; (2) the ABA's Model Rules of Professional Conduct; (3) the Model Code of Professional Responsibility; and (4) state rules. <u>See</u> <u>FDIC v. United States Fire Ins. Co.</u>, 50 F.3d 1304, 1312 (5th Cir. 1995).

Although the relevant ethical canons provide useful guidance in adjudicating motions to disqualify, they are not dispositive. <u>Id.</u> at 1314. A court must take into account the social interests at stake, including the right of a party to his counsel of choice and an attorney's right to freely practice her profession. <u>Id.</u> In sum, "[a]ll of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." <u>Id.</u>

B.

The defendants contend that plaintiff's counsel, Mark Ross, should be disqualified because he is a necessary witness to material and contested issues in this litigation. Indeed, this Court's Local Rules, the Rules of Professional Conduct of the Louisiana State Bar Association, and the Model Rules prohibit a

5

lawyer from acting as an advocate at trial in which the lawyer is "likely to be a necessary witness," unless the testimony relates to an uncontested issue or disqualification would work substantial hardship on the client.  Local Rule 83.2.4E (adopting the Rules of Professional Conduct of the Louisiana State Bar Association); Rules of Professional Conduct of the Louisiana State Bar Association 3.7(a); Model Rules of Professional Conduct 3.7(a).  The Model Code and the Louisiana Rules enunciate another standard that requires that a lawyer who may be called as a witness other than on behalf of his client withdraw from representation if it becomes "apparent that his testimony is or may be prejudicial to his client."  Rules of Professional Conduct of the Louisiana State Bar Association 3.7(c); Model Code of Professional Responsibility DR 5-102(B).

 Here, the defendants have failed to demonstrate that Ross is a necessary witness.  They point to Ross' involvement with Scottsdale's failure to oppose Charity's prescription exception and with the drafting and execution of the agreement in which McCahill assigned his rights to pursue a legal malpractice action against the defendants to Scottsdale, but they fail to show that Ross' testimony as to these matters would go to any contested issues or even that his testimony is relevant and necessary to this litigation.  Nor have the defendants shown that Ross' testimony would be prejudicial to Scottsdale.  In short, the defendants' conclusory statements do not warrant that the harsh penalty of

disqualification be imposed here.

Moreover, the rationale underlying the advocate-witness prohibition supports denial of the motion. The rule derives from a concern that a jury will accord disproportionate weight to the attorney's testimony or fail to distinguish between the attorney's testimony as a witness and his arguments as an advocate. <u>Crowe v. Smith</u>, 151 F.3d 217, 233-34 (5th Cir. 1998). This justification is inapplicable where, as here, the trier of fact will be a judge rather than a jury. <u>Id.</u> at 234. Accordingly, disqualification of plaintiff's counsel is inappropriate in this case. The defendants' motion is denied.

> II. <u>The Plaintiff's Motion for Summary Judgment on the Issue of Liability</u>

A.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a

factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50. Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

B.

Because this Court's jurisdiction is based on diversity of citizenship, Louisiana law governs the plaintiff's malpractice claim. To prove a claim for legal malpractice under Louisiana law, a plaintiff must prove that (1) there was an attorney-client relationship, (2) the attorney was negligent, and (3) the negligence caused the plaintiff some loss. Beis v. Bowers, 649 So. 2d 1094 (La. Ct. App. 4th Cir. 1995). Once the client proves that

the former attorney accepted employment and acted negligently, the client has established a prima facie case and the negligent attorney bears the burden of proving that the mishandled claim or litigation would not have succeeded. <u>Jenkins v. St. Paul Fire & Marine Ins. Co.</u>, 422 So. 2d 1109, 1110 (La. 1982).

Thus, the Court first considers whether the plaintiff has established a prima facie case. Because there is no dispute that there was an attorney-client relationship between Scottsdale and Jones, the Court must turn to whether Jones acted negligently in his representation of Scottsdale. "An attorney is obligated to exercise at least the degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. He is not required to exercise perfect judgment in every instance. However, the attorney's license to practice and his contract for employment hold out to his client that he possesses certain minimum skills, knowledge, and abilities." <u>Ramp v. St. Paul Fire & Marine Ins. Co.</u>, 269 So. 2d 239, 244 (La. 1972).

Scottsdale's primary contention is that Jones allowed its medical malpractice claim to prescribe. Therefore, the Court must consider whether the suit filed by Jones on behalf of Scottsdale was in fact prescribed and whether the negligence of Jones caused the action to be prescribed.[3] A medical malpractice action

---

[3] Collateral estoppel does not prevent the parties from urging the Court to consider whether the medical malpractice suit was prescribed, even though the state court sustained Charity's

9

prescribes one year from the date of discovery of the alleged act, omission, or neglect, or three years from the date of the alleged act, omission, or neglect, regardless of the date of discovery, whichever occurs first. La. Rev. Stat. § 9:5628(A). Thus, the date on which the event giving rise to McCahill's medical malpractice claim occurred and the date on which McCahill discovered that event are particularly relevant.

In its motion, Scottsdale argues that Scottsdale's petition filed in the medical malpractice case was prescribed on its face because it alleged facts suggesting the malpractice occurred between March 1992 and April 1993. However, given that the running of the one-year prescriptive period begins from <u>discovery</u> of the acts constituting malpractice, and not necessarily from the date of the occurrence of such acts, the face of the petition does not reveal that the suit was prescribed when it was ultimately filed in 1995.

As to the date McCahill discovered the alleged malpractice, Scottsdale contends that McCahill discovered Charity's malpractice

---

exception of prescription. Under Louisiana law, a party is precluded from relitigating any issue "actually litigated and determined" whose resolution is essential in a subsequent action <u>between the parties to the original action</u>. La. Rev. Stat. § 13:4231(3); <u>see also</u> <u>Allen v. McCurry</u>, 449 U.S. 90 (1980) (holding that a federal court must give the same effect to a state court decision that a state court would). Thus, because none of the defendants in this case were parties to the medical malpractice action, the defendants are not precluded from relitigating the prescription issue.

10

on April 10, 1994, the date on which his leg was amputated, and thus that prescription commenced to run as of that date. But there is no evidence in the record before the Court that necessarily supports such a conclusion. Scottsdale has produced no competent evidence to establish that McCahill discovered the malpractice by Charity on April 10, 1994, so as to trigger the running of prescription.[4] Plainly, when McCahill discovered the malpractice remains a contested issue of material fact that must be resolved before judgment can be entered in this case. Accordingly, the Court denies Scottsdale's motion for summary judgment on this claim. The record is simply not ripe for summary treatment.

Scottsdale also contends that during the representation, Jones withheld information concerning Jones' negligence from Scottsdale. The Court finds that there are contested issues of material fact that remain as to this claim as well. Scottsdale's allegations are controverted by Jones' deposition testimony. As such, summary judgment is inappropriate as to this claim.

Accordingly, the plaintiff's motion for summary judgment is denied.

---

[4] Instead, Scottsdale has illustrated inconsistencies in its argument on this potentially dispositive issue. Indeed, Scottsdale states in its motion that McCahill acknowledged that he knew of Charity's malpractice <u>before</u> the April 10, 1994, amputation, and cites to evidence that indicates that McCahill stated he learned of the malpractice as early as March 1992. Of course, if McCahill did in fact discover the malpractice at such an early date, his medical malpractice claim might have prescribed well before Scottsdale retained Jones.

## Conclusion

For the foregoing reasons, the defendants' motion to disqualify is DENIED, and the plaintiff's motion for summary judgment on the issue of liability is DENIED.

New Orleans, Louisiana, September 29, 2000.

                                      MARTIN L. C. FELDMAN
                                  UNITED STATES DISTRICT JUDGE