FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB -1  PM 12: 19

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SCOTTSDALE INSURANCE COMPANY        *        CIVIL ACTION

VERSUS                              *        NO. 00-225

SCOTT G. JONES, ESQ., ET AL         *        SECTION "F"

ORDER AND REASONS

Before the Court are four motions: (1) the defendants' Motion for Summary Judgment, (2) the plaintiff's Motion for Summary Judgment that Filing of False Affidavit is Legal Malpractice as a Matter of Law, (3) the defendants' Motion to Strike, and (4) the plaintiff's Motion in Limine to Preclude Defendants from Submitting Expert Medical Testimony. For the reasons that follow, the Court (1) denies without prejudice defendants' Motion for Summary Judgment, (2) denies the plaintiff's Motion for Summary Judgment, (3) denies as premature the defendants' Motion to Strike, and (4) denies the plaintiff's Motion in Limine.

Background

The Court is familiar with the facts of this legal malpractice



DATE OF ENTRY
FEB - 1 2001

case in which the plaintiff, Scottsdale Insurance Company, is suing its former attorney, Scott Jones, the law firm of Hulse & Wanek, and their insurer. The case arises out of two earlier lawsuits. The first suit was filed in September 1992 by Van Lauren McCahill against the owners of an apartment building and their insurer, Scottsdale, for injuries sustained when McCahill fell off the balcony of an apartment located in the building (the McCahill matter). On June 24, 1994, Jones, the defendant here, was retained as the owners' and Scottsdale's counsel in the McCahill matter. In his investigation of the case, Jones discovered information suggesting that Scottsdale should pursue a separate medical malpractice action in connection with McCahill's treatment at Charity Hospital after the accident.[1] Subsequently, McCahill's personal injury suit was settled for $600,000. At the July 21, 1994, settlement conference, Jones discussed the possibility of pursuing a medical malpractice case against Charity with McCahill and his attorney.

On April 5, 1995, McCahill and Scottsdale entered into a "Litigation Agreement," wherein they agreed to assert a claim for medical malpractice, which would become the second lawsuit

---

[1] McCahill was treated at Charity periodically beginning on February 29, 1992, and ending on April 10, 1994, when McCahill's left leg below the knee was amputated.

2

underlying the case before this Court. Jones assumed the role of lead counsel. He filed the medical malpractice petition before the Patients Compensation Fund (PCF) on April 12, 1995. After learning that the PCF was not the appropriate entity with which to file a medical malpractice action against Charity, a state medical facility, Jones forwarded a petition invoking a medical review panel to the Division of Administration for filing on May 26, 1995.

During the pendency of the medical review panel proceeding, Charity filed an exception of prescription, arguing that by the time the suit was filed, more than one year had passed since the incident causing McCahill's injury (his treatment had begun on February 29, 1992, and ended on April 10, 1994). Jones prepared an opposition to the exception, maintaining that McCahill did not discover the malpractice until July 21, 1994, the date of the settlement in the McCahill matter. The exception was never heard. On October 23, 1996, the medical review panel rendered its decision that Charity had not deviated from the standard of care.

Nevertheless, on November 26, 1996, Jones filed a suit for medical malpractice in Civil District Court for the Parish of Orleans on behalf of Scottsdale and McCahill. Charity filed another exception of prescription on July 16, 1999, in which it then argued that McCahill had knowledge of his allegedly substandard treatment at Charity on April 10, 1994, at the latest,

3

"although probably earlier." Jones prepared another opposition, this time including an affidavit in which McCahill swore that he was unaware of any malpractice until July 21, 1994, the date of the settlement conference in the McCahill matter. This affidavit was executed after McCahill apparently made other conflicting statements indicating that he knew of Charity's malpractice (possibly as early as 1992).[2]

In October 1999, Jones withdrew as counsel for McCahill and Scottsdale on the ground that a conflict had arisen between them. Mark Ross was substituted as counsel for Scottsdale.

Thereafter, Scottsdale put Jones and Hulse & Wanek on notice of a potential legal malpractice claim against them. Ross then filed an amended response to Charity's exception of prescription, withdrawing Scottsdale's opposition.[3] On January 21, 2000, the state court granted Charity's exception of prescription. That same day, McCahill executed an agreement, which Ross drafted, whereby he assigned his rights in any claim for legal malpractice against Jones and Hulse & Wanek in exchange for $15,000.

Scottsdale filed this lawsuit for legal malpractice on January

---

[2] Quite obviously, the Court will be most interested in McCahill's story... and his credibility.

[3] Scottsdale maintains that it withdrew its opposition because it considered any opposition based on McCahill's affidavit to be both "legally inadvisable and professionally unethical."

4

25, 2000.  Scottsdale advances five claims:  (1) that the defendants caused Scottsdale's medical malpractice claim to prescribe by failing to file the petition within one year of McCahill's amputation, or by April 10, 1995; (2) that the defendants negligently or fraudulently failed to inform Scottsdale that they failed to file the medical malpractice petition on time throughout the course of the representation; (3) that the defendants failed to advise Scottsdale that they had a conflict of interest caused by their failure to file the medical malpractice petition timely; (4) that the defendants misled Scottsdale regarding the merits of the State's prescription exception; and (5) that on February 17, 1999, the defendants attempted to settle Scottsdale's medical malpractice case without authority and contrary to Scottsdale's instructions.

    The parties have now filed a number of motions for the Court's consideration.  The defendants seek summary judgment on the ground that the plaintiff's claims against them are perempted.  Scottsdale seeks summary judgment on the issue whether filing a false affidavit is legal malpractice as a matter of law.  In addition, the defendants have moved to strike the testimony of Rick Kannally, and Scottsdale has moved for an order prohibiting the defendants from introducing expert medical testimony at trial.

I.  <u>The Defendants' Motion for Summary Judgment</u>

A.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  <u>See id.</u>  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  <u>Id.</u> at 249-50.  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5th Cir.

6

1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. <u>Id.</u> Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255.

B.

Because this Court's jurisdiction is based on diversity of citizenship, Louisiana law governs the plaintiff's malpractice claim. Section 9:5605 of the Louisiana Revised Statutes sets forth the time periods in which a legal malpractice suit must be brought. It provides that

> [n]o action for damages against any attorney at law . . . , whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. Rev. Stat. § 9:5605(A). Thus, an action for legal malpractice is barred if it is not filed within one year from the date of the negligent act or the date the negligence was discovered or should

have been discovered, or within three years from the date the negligent act occurred, regardless of the date of discovery. Id. However, the peremptive periods provided in section 9:5605 do not apply in cases of fraud.[4] Id. § 9:5605(E).

The statute expressly provides that the one-year and three-year periods are peremptive in nature. Id. § 9:5605(B) ("The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code article 3458 . . . ."). Peremption may not be renounced, interrupted, or suspended. La. Civ. Code. art. 3461; Hebert v. Doctors Mem'l Hosp., 486 So. 2d 717, 723 (La. 1986). Moreover, the doctrine of contra non valentum does not interfere with the running of a peremptive period.[5] Hebert, 486 So. 2d at 723.

In this case, the defendants seek summary judgment on the ground that the plaintiff's claims are perempted under section

---

[4] Fraud is defined in Civil Code article 1953 as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953.

[5] Contra non valentum is a judicially created doctrine that prevents the running of prescription in four situations, including when "the cause of action is not known or reasonably knowable by the plaintiff." Reeder v. North, 701 So. 2d 1291, 1298 n.4 (La. 1997).

9:5605. They maintain that the date of the alleged act, omission, or neglect about which Scottsdale complains is April 10, 1995, and that Scottsdale became aware of the defendants' purported negligence no later than January 1997. Thus, according to the defendants, the plaintiff filed its lawsuit too late; Scottsdale's legal malpractice action is barred by both the one-year and three-year peremptive periods of section 9:5605. In response, Scottsdale urges that because this case involves claims of fraud, peremption is inapplicable under the fraud exception of section 9:5605.[6]

The Court finds that there are issues of fact that preclude summary judgment on this issue. Several of the acts of malpractice advanced by the plaintiff in its complaint are tainted with allegations of fraud on the part of the defendants. The facts that would tend to prove whether the defendants misrepresented or suppressed the truth and whether the defendants possessed the requisite intent to defraud remain in dispute. Thus, the Court cannot conclusively determine that the fraud exception is inapplicable and properly apply the limitations periods of section 9:5605. Accordingly, the Court denies the defendants' motion

---

[6] Scottsdale apparently does not dispute that its claims would otherwise be perempted by operation of section 9:5605.

without prejudice.[7]

## II. The Plaintiff's Motion for Summary Judgment

Scottsdale moves for summary judgment on the issue whether filing a false affidavit is legal malpractice as a matter of law. It contends that McCahill's affidavit, which the defendants drafted and filed in opposition to Charity's exception of prescription in the underlying medical malpractice matter, contains materially false statements and that the filing of this affidavit constituted malpractice as a matter of law. However, several issues of material fact remain in dispute, including whether the content of the affidavit is false and the defendants' knowledge concerning the accuracy of the affidavit. As such, this issue is not ripe or appropriate for summary treatment, and the Court denies the plaintiff's motion.

## III. The Defendants' Motion to Strike

The defendants seek an order striking Rick Kannally from the plaintiff's witness list on the ground that Kannally's doctor has indicated that Kannally will be unable to testify because of his medical condition. They also seek an order prohibiting the plaintiff from using Kannally's affidavit because the defendants

---

[7] If the plaintiff fails to prove fraud at trial on the merits, the Court would entertain another motion on the peremption issue.

have been unable to question or cross-examine Kannally to test the veracity of the statements made in his affidavit. The Court finds the defendants' motion to be premature. It is not known whether or how the plaintiff will attempt to introduce Kannally's live testimony or his affidavit. The Court will consider any appropriate objections to the introduction of Kannally's testimony or affidavit if and when it is used at trial.

### IV. The Plaintiff's Motion in Limine

Finally, the plaintiff seeks an order preventing the defendants from submitting expert medical testimony on the ground that the defendants failed to file their witness list timely and that the defendants' expert report does not comply with the disclosure requirements of Court's Pretrial Order and Federal Rule of Civil Procedure 26(a)(2). The Court denies the motion.

The Court's Pretrial Order mandates that both parties file their witness and exhibit lists no later than 60 days before the date of the pretrial conference, which was scheduled for February 1, 2001. In this case, this deadline fell on December 3, 2000, which is a Sunday.[8] When the last day of a filing period falls on

---

[8] The plaintiff's assertion that the deadline fell on December 1, 2000, is in error, as that date actually falls 62 days before the date of the pretrial conference. The plaintiff's error may be the result of assuming that two months and 60 days always represent the same length of time, which obviously was not the case here.

a Sunday, the period runs until the end of the next day, which in this case was Monday, December 4. See Fed. R. Civ. P. 6(a). As they filed their lists on December 4, the defendants filed their witness list timely. This motion comes close to being frivolous.

The Court's Pretrial Order provides that the parties must exchange written reports of experts.[9] The Order further directs that an expert report must set forth the matters about which the expert will testify and the basis therefor. The defendants submitted as the report of their expert, Dr. J. Monroe Laborde, the opinion and reasons of the medical review panel that evaluated the Scottsdale's medical malpractice case against Charity. Although this report may be unconventional in form, the Court will not strike the defendants' report on this basis without a showing of prejudice to the plaintiff. Because the plaintiff has not demonstrated that it has been prejudiced, the Court declines to strike the report at this time.

---

[9] The Court does not address the plaintiff's argument that the defendants' expert report does not comply with the dictates of Rule 26(a)(2). Local Rule 26.3E provides that the Civil Justice Expense and Delay Reduction Plan of this Court governs the scope of disclosure under Rule 26(a)(2). The Plan provides that the guidelines for disclosure and discovery are to be set as ordered by the Court at a preliminary conference. The Court's Pretrial Order sets forth the guidelines for disclosure and discovery and thus, that Order, and not Rule 26(a)(2), governs the scope of expert reports.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is DENIED without prejudice, the plaintiff's Motion for Summary Judgment is DENIED, the defendants' Motion to Strike is DENIED as premature, and the plaintiff's Motion in Limine is DENIED.

New Orleans, Louisiana, February 1, 2001.

                                        MARTIN L. C. FELDMAN
                                  UNITED STATES DISTRICT JUDGE