

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB -2  AM 10: 54

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY | * | CIVIL ACTION NO. 00-0225 |
| VERSUS | * | SECTION "F" |
| SCOTT G. JONES, ESQ., HULSE AND WANEK, PLC AND XYZ INSURANCE COMPANY | * | MAGISTRATE (4) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PRE TRIAL ORDER

By order of the Court dated May 25, 2000, the parties to the above-captioned matter submit the following Pre Trial Order for the Court's consideration:

1.  **Date of the Pre-trial Conference:** February 1, 2001.

2.  **Appearance of Counsel:**

    Mark L. Ross, Esq.
    600 Jefferson Street, Ste. 501
    Lafayette, LA 70501
    Telephone: (337) 266-2345
    Attorney for Plaintiff, Scottsdale Insurance Company

DATE OF ENTRY
FEB - 2 2001

fee_____
_____Process
X  Dktd_____
_____CtRmDep_____
Doc.No._____

William E. Wright, Jr., Esq.
Margaret L. Sunkel, Esq.
Deutsch, Kerrigan & Stiles, L.L.P
755 Magazine St.
New Orleans, Louisiana 70130-3672
Telephone: (504) 581-5141
Attorneys for Scott G. Jones and Hulse & Wanek, PLC

3.    **Description of the Parties:**

Scottsdale Insurance Company is the plaintiff in its own right.  No insured of Scottsdale is

a party to this case.  Scottsdale seeks to recover in this legal malpractice case $600,000 which had

been the settlement paid to a personal injury claimant, Van Lauren McCahill, on July 21, 1994

The Defendants are Scott G. Jones and the law firm Hulse & Wanek, PLC.  Jones is presently

and at all times pertinent to the above-captioned matter was an attorney licensed to practice law in

the State of Louisiana practicing with the law firm of Hulse and Wanek, PLC.

4.    **Jurisdiction**

a.  Jurisdiction exists pursuant to 28 U.S.C. Section 1332 in that complete diversity exists

between the parties and the amount in controversy exceeds $75,000.  Scottsdale, the plaintiff, is a

corporation organized under the laws of the State of Ohio with its principal place of business in

Scottsdale, Arizona.  Defendants, Scott Jones, Esq. and the law firm of Hulse and Wanek, are

citizens of Louisiana.

b.  The parties stipulate that the amount in controversy exceeds $75,000.

5.    **Pending and/or Contemplated Pre-Trial Motions**

The following Motions are pending before the Court and are set for hearing on January 31,

2001:

a. Defendants' Motion for Summary Judgment arguing that Scottsdale's cause of action is extinguished through peremption by the application of La. R.S. 9:5605;

b. Defendants' Motion to Strike moving to strike Mr. Rick Kannally from Plaintiff's Witness List to testify at trial and prohibiting Scottsdale from using Mr. Kannally's Affidavit in the prosecution of the above-captioned matter;

c. Plaintiff's Motion in Limine to Preclude Defendants From Submitting Expert Medical Testimony moving to preclude defendants from introducing the testimony of defendants' medical expert and from calling any treating physicians as witnesses; and

d. Scottsdale Insurance Company's Motion for Summary Judgment That Filing of False Affidavit is Legal Malpractice as a Matter of Law moving the Court to find that defendants' filing of Mr. Van McCahill's Affidavit in the underlying matter is legal malpractice as a matter of law.

**6.    Brief Summary of Material Facts Claimed by Each Party**

a. Plaintiff, Scottsdale Insurance Company.

On June 24, 1994, Scottsdale Insurance retained defendants to defend Scottsdale and its insured, Meyer Investments, Inc., in a personal injury lawsuit brought by Mr. Van Lauren McCahill. Mr. McCahill claimed that he fell from an apartment balcony maintained by Meyer Investments in February 1992. Mr. McCahill fractured his left leg which, after two years of treatment at Charity Hospital, was amputated below the knee on April 10, 1994. Defendants settled Mr. McCahill's lawsuit against Scottsdale in a settlement conference held on July 21, 1994 through payment of $600,000.

Prior to the settlement, defendant, Scott Jones, developed information that Scottsdale could have a claim over against Charity Hospital for greatly aggravating Mr. McCahill's claim for a fractured leg to one that involved an amputation. Scott Jones mentioned his belief that Scottsdale could have a medical malpractice claim to Mr. McCahill and his lawyer at the July 21, 1994 settlement conference. However, it is undisputed that neither Mr. McCahill or his lawyer, Michael Hingle, made any response to Mr. Jones' comment about a possible medical malpractice action against Charity Hospital.

Scottsdale authorized Mr. Jones to pursue a medical malpractice recovery action against Charity Hospital. Mr. Jones recognized that he should file a petition on Scottsdale's behalf no later than April 10, 1995, the one year anniversary of Mr. McCahill's amputation to preclude the State of Louisiana from claiming that Scottsdale's med mal claim has prescribed. However, Mr. Jones had never prosecuted a med mal case before this case. In addition, Mr. Jones never spoke with Mr. McCahill after the July 21, 1994 settlement conference about his knowledge of Charity Hospital's medical malpractice. Given Mr. Jones' lack of experience in pursuing a medical malpractice case, he mistakenly believed and wrote to Scottsdale that he should file his claim against Charity Hospital with the Patient's Compensation Fund (PCF), when the correct entity was the State's Division of Administration. In addition, instead of filing Scottsdale's claim on or before April 10, 1995, Mr. Jones filed the claim on April 12, 1995.

A defense attorney who appeared briefly in the med mal case, Mr. Martin Hunley, subsequently advised Mr. Jones that he had to re-file Scottsdale's med mal petition against Charity Hospital before the State's Division of Administration. Mr. Jones did so on May 26, 1995. Mr.

-4-

Jones did not tell Scottsdale about his error in filing its med mal petition. Mr. Jones maintains that his client, Scottsdale, did not need to have that information.

Mr. Jones never recommended that Scottsdale should seek other counsel to review the med mal case. Mr. Jones' failure to advise Scottsdale to consult separate counsel, and his decision over the years to forego telling Scottsdale about his faulty filing of Scottsdale's med mal petition, is a major source of Scottsdale's damages.

On or about July 19, 1996, 16 months after misfiling Scottsdale's petition, Mr. Jones sent Scottsdale's examiner a copy of defendant's brief in opposition to an exception of prescription fled by the State of Louisiana seeking to dismiss Scottsdale's med mal case. Mr. Jones' brief said that he had promptly filed Scottsdale's med mal case on May 26, 1995, but made no mention of the prior tardy filing before the PCF. Mr. Jones did not report to Scottsdale the full facts underlying the State's prescription exception, nor send Scottsdale a copy of the State of Louisiana's prescription exception brief which did discuss Mr. Jones faulty April 12, 1995 filing before the PCF.

The court never heard the State's prescription exception. In 1996, Mr. Jones filed a med mal action on Scottsdale's behalf in Civil District Court for the Parish of Orleans, However, defendants did almost nothing to prosecute Scottsdale's med mal case. In 1997, Mr. Jones wrote to Scottsdale detailing Mr. McCahill's knowledge that Charity Hospital had committed med mal prior to his April 10, 1994 amputation, knowledge which supported the state of Louisiana anticipated prescription exception. Mr. McCahill consistently told Mr. Jones over the years that he knew of Charity's medical malpractice before his amputation. Charity's medical records in defendants' possession

since 1994 also showed that Mr. McCahill had known of Charity's medical malpractice before his amputation.

In February 1999, Mr. Jones recommended that Scottsdale settle its claim for $38,000. At the same time, Mr. Jones made a settlement offer to the State of Louisiana to settle Scottsdale's claim for $38,000. Scottsdale did not know about this settlement offer to the State of Louisiana until after Scottsdale retained new counsel in October 1999. In any case, Scottsdale rejected Mr. Jones' settlement proposal. Scottsdale still did not know the facts behind the original misfiling of its med mal lawsuit.

In July 1999, the State of Louisiana filed a prescription exception in Scottsdale' Civil District Court med mal action. On September 8, 1999, Scott Jones wrote Scottsdale that to his claimed surprise, Mr. McCahill told him that he had know of Charity's medical malpractice before his amputation. Mr. Jones therefore claimed that he feared the State of Louisiana's prescription exception could succeed and that Scottsdale should therefore settle its $600,000 claim for $15,000. Mr. Jones also wrote Mr. McCahill a letter on the same day which, contradicting his letter to Scottsdale, recited how Mr. McCahill had previously told him on several occasions of Mr. McCahill's pre-amputation knowledge. Although Mr. Jones letter to Scottsdale purported to discuss the State of Louisiana's prescription exception, Mr. Jones still withheld from Scottsdale the truth behind the prescription exception as it related to his late and faulty filing of Scottsdale's petition in April 1995.

Facing the State's prescription exception, Mr. Jones decided to draft an affidavit for Mr. McCahill's signature which falsely stated that Mr. McCahill did not know of Charity's med mal until

the July 21, 1994 settlement conference. Mr. McCahill has twice testified under oath that the affidavit is false and he signed it given that Mr. Jones, as his lawyer in this and another personal injury case, pressed him to do so. No issue exists regarding the affidavit's falsity. Mr. Jones admits he told Mr. McCahill that if he did not sign the affidavit as drafted, Mr. McCahill could lose any chance of a recovery from Charity. Mr. Jones suborned Mr. McCahill into signing the affidavit, which he filed with the Civil District Court.

In October 1999, Scottsdale retained its present counsel who ascertained the foregoing events. Scottsdale became concerned that the State of Louisiana's Attorney General's office could seek sanctions should the falsity of Mr. McCahill's affidavit be discovered. Scottsdale further considered that if it did not tell the med mal trial court about the falsity of Mr. McCahill's affidavit, that Scottsdale would have to continue to suborn Mr. McCahill in his future deposition and trial testimony to deny his knowledge of Charity's medical malpractice.

Defendants maintain that Scottsdale and undersigned counsel were obligated to protect defendants and oppose the State's prescription exception. Scottsdale declined to participate in a fraud upon the medical malpractice trial court. The State of Louisiana's attorney who represented Charity Hospital may testify on the range of sanctions, civil and criminal, which the State of Louisiana may have pursued against Scottsdale Insurance had the State discovered that the affidavit of Van Lauren McCahill was false. Scottsdale therefore withdrew its opposition to the State's prescription exception and subsequently filed this action against defendants.

Scottsdale seeks to recover its $600,000 in settlement proceeds paid to Mr. McCahill in the original personal injury settlement from defendants, the amount sought in the subsequent medical

-7-

malpractice case, as well as attorneys' fees and costs paid to defendants in the prosecution of the case and interest on the foregoing since April 10, 1995. The value of the underlying case in underlined in that Mr. Jones wrote Scottsdale in 1996, two years after obtaining all medical records, that he deemed the medical malpractice case to have a 70% chance of success.

   b. Defendants:

### *McCahill v. Scottsdale Insurance Co.*

On February 29, 1992, Van Lauren McCahill ("McCahill") fell off the balcony of an apartment located at 1539 Euterpe Street, New Orleans, Louisiana, allegedly as a result of a defect in the balcony's hand rail. McCahill fell to the ground and fractured his ankle. For the next two years McCahill was continuously treated by doctors at Charity Hospital. On April 10, 1994, McCahill's left leg was amputated below the knee.

In September of 1992, McCahill filed a suit for damages against Michael Mayer, III and Mayer Investments, the owners of the Euterpe Street property, and their insurer, Scottsdale Insurance Company (the "*McCahill v Scottsdale* matter"). The defendants to the *McCahill v Scottsdale* matter were initially represented by Mr. Nahum Laventhal, Esq., an attorney appointed by Scottsdale as the owners' insurer. On or about June 24, 1994, Jones, defendant herein, was substituted as counsel for the defendants. At that time Scottsdale was attempting to negotiate a settlement with McCahill. Around this time Scottsdale had also undertaken investigating the possibility of a medical malpractice claim against Charity Hospital in an effort to recoup any monies ultimately paid to McCahill.

On July 21, 1994, the *McCahill v Scottsdale* matter settled for $600,000.00. At a July 21, 1994 settlement conference Jones, McCahill and McCahill's attorney, Mr. Michael Hingle ("Hingle"), discussed the possibility of filing a medical malpractice claim against Charity Hospital. Hingle indicated that they would consider it. Neither McCahill nor Hingle stated to Jones that they had considered the possibility of medical malpractice prior to this date.

### *McCahill v. The Louisiana Health Care Authority Medical Center of Louisiana at New Orleans a/k/a Charity Hospital of New Orleans*

On April 5, 1995, McCahill and Scottsdale entered into a Litigation Agreement whereby they agreed to file a claim for medical malpractice, with Scottsdale taking the lead, and split any recovery (75% to Scottsdale and 25% to McCahill). By correspondence dated May 26, 1995, a Petition invoking a Medical Review Panel was forwarded to the Commissioner of Administration for filing therewith. The Petition was apparently received on June 1, 1995.[1]

During the pendency of the Review Panel proceeding, the State of Louisiana filed an Exception of Prescription on behalf of Charity Hospital. On or about July 19, 1996, Jones filed an Opposition to the State of Louisiana's Exception of Prescription. Jones opposed the Exception on the basis that McCahill could not have known of the malpractice until July 21, 1994, the date of the

---

[1] In an effort to discredit defendants, Scottsdale has accused Jones of intentionally hiding information relating to the State of Louisiana's prescription defense. As its evidence thereof, Plaintiff repeatedly states that the Petition invoking a Medical Review Panel was initially filed with the Patients Compensation Fund and that Jones hid this from Scottsdale. However, Jones always felt that the operative date he was working with was the date McCahill "discovered" the alleged medical malpractice, which he believed to be July 21, 1994, the date of the settlement conference in the *McCahill v. Scottsdale* matter. Accordingly, he reasonably believed that whether the Petition was filed in April or May of 1995 was not fatal to the medical malpractice action.

Scottsdale settlement.[2]  Rick Kannally ("Kannally"), the Scottsdale adjuster appointed to the matter,

was copied on the July 19, 1996, letter to the Clerk of Court filing Scottsdale's Opposition to the

State of Louisiana's Exception.  On July 30, 1996, Kannally made a note in Scottsdale's "Note Pad"

as follows:

> rec'd Memo in Opposition to Exception of Prescription.  We contend
> our claim was brought w/in applicable prescriptive period.

The State did not push its Exception to a hearing.  On October 23, 1996, the Medical Review Panel

returned a decision that there was no deviation from the standard of care by the Charity Hospital

doctors.

On November 26, 1996, Jones filed a civil suit for medical malpractice in Civil District Court

for the Parish of Orleans with Scottsdale's approval.  Subsequent to that filing, Jones wrote a status

report to Kannally, stating in part as follows:

> I fully anticipate the first responsive pleading filed by the State will
> be an Exception of Prescription.  They are going to try and argue that
> Mr. McCahill should have filed suit within one year after the date of
> his amputation.  Of course, this implies that Mr. McCahill should
> have known, the day after his amputation took place, that there had
> been malpractice.  That argument is ridiculous and I don't believe
> there is any merit to it.  I believe that we will win on the prescription
> issue.

By correspondence dated July 21, 1997, Jones informed a new Scottsdale adjuster, Ms. Mara

Gilson, that McCahill was now claiming that McCahill's treating physician, Dr. Ken Adatto ("Dr.

---

[2]  La. R.S. 9:5628 provides that an action for medical malpractice must be brought within a year of the date of the alleged act, omission or neglect *or* within one year from the date of discovery of the alleged act, omission or neglect.  In all events the claim must be filed within three years of the alleged act, omission or neglect.

Adatto"), had told him during one of his early visits that the Charity Hospital physicians did not properly set his ankle at the time of the March 2, 1992 surgery. In addition, McCahill claimed that Dr. John Burvant ("Dr. Burvant"), the physician who performed the original surgical repair of McCahill's ankle, had made the statement to McCahill several months after the initial March 2, 1992 surgery that a mistake had been made during the surgery. Upon inquiry, by Jones both physicians specifically denied ever having made any such statements to McCahill.

During the latter part of 1998 and the beginning of 1999, McCahill became increasingly uncooperative. He had apparently spent the entirety of the settlement received from the *McCahill v Scottsdale* matter and was desperate for money. He wanted to settle the medical malpractice action, receive his portion of the settlement funds and have the matter concluded. On February 17, 1999, Jones wrote to Ken Fulgenzi, the next Scottsdale adjuster, to advise him of McCahill's repeated requests that the matter be settled for the amount of the medicals, or approximately $38,000.00. Jones recommended settling for this amount "[i]n light of Mr. McCahill's questionable character ... ."

On July 16, 1999, the State filed a second Exception of Prescription, this time in Civil District Court for the Parish of Orleans. Again, Jones sent a copy of the State's Exception of Prescription to Scottsdale. In support of its Exception, the State stated that McCahill was treated at Charity Hospital from February 29, 1992 through April 10, 1994. It argued that it was not "reasonable" for McCahill not to have "discovered" the alleged malpractice during the course of his treatment. The State primarily relied on a statement McCahill allegedly made on April 22, 1993, during therapy, wherein he allegedly stated that he knew he was going to lose his leg. The State

-11-

concluded by arguing that McCahill had the constructive knowledge necessary to start the running

of prescription at that time or, at the very latest, April 10, 1994, when the amputation occurred.

The hearing on the Exception was originally set for August 27, 1999, but Jones requested a

continuance in order to prepare an Opposition. Thereafter, Jones personally met with McCahill in

connection with the preparation of an Opposition to the State's Exception of Prescription. Jones

traveled to McCahill's home and asked him point blank, despite the alleged statements made by Drs.

Adatto and Burvant, if he believed there had been adequate care by the Charity Hospital physicians

in 1992. McCahill confirmed to Jones that, despite these physician statements, he did not feel there

was malpractice by the Charity Hospital physicians until Jones spoke to him in July of 1994. Based

upon this information, Jones felt it appropriate to have McCahill sign an affidavit stating that he was

unaware of any malpractice until July 21, 1994, when he was informed by Jones that there may have

been negligence on the part of the Charity Hospital physicians. This Affidavit was filed in support

of the Opposition to the State's Exception.[3]

Subsequently, McCahill began to insist that they take the State's most recent offer to settle

for $15,000.00. He then offered to take $3,750.00 (his percentage under the Litigation Agreement

of $15,000.00) and walk away. When Jones told McCahill that Scottsdale did not appear to be

interested in such a scenario, McCahill told Jones that, in light of Scottsdale's lack of cooperation,

he would "say some things" that could damage or sabotage the medical malpractice case. On

---

[3]In a recent deposition McCahill testified that the information contained in the Affidavit was inaccurate. According to McCahill he was aware of medical malpractice as early as early 1993. Of course, such knowledge would have commenced the prescriptive period, requiring any medical malpractice suit to be filed by early 1994. As indicated above, Jones did not become involved in the McCahill v. Scottsdale matter until June 1994.

October 12, 1999, Jones wrote to Brezinski informing her of McCahill's position and informing her that, if no settlement could be reached, he would be forced to withdraw from representing McCahill and Scottsdale in light of the conflict that had arisen between them. On October 14, 1999, Jones withdrew as counsel of record.

**Scottsdale Withdraws Opposition to State of Louisiana's Exception of Prescription**

On October 22, 1999, Mark Ross ("Ross") was substituted as the attorney for Scottsdale. On January 6, 2000, Ross filed an Amended Response to the State's Exception of Prescription, withdrawing Scottsdale's Opposition.

Meanwhile, Ross drafted a proposed Receipt, Release and Assignment of Rights to be executed by and between McCahill, Charity Hospital and Scottsdale. According to the terms of the Receipt, Release and Assignment of Rights, McCahill was to dismiss his claim against Charity Hospital and receive $15,000.00. In consideration of receiving Scottsdale's consent to his receiving one hundred percent of the $15,000.00 in settlement, McCahill was to assign his rights to Scottsdale in any claim for legal malpractice against Jones and H & W. Further, McCahill was to cooperate in prosecuting the legal malpractice claim.[4]

A hearing on the State's Exception of Prescription was held on January 21, 2000. In light of the withdrawal of opposition the Court entered Judgment dismissing Scottsdale's claim.

---

[4]According to Brezinski, Scottsdale gave McCahill the entire $15,000.00 because he was "kind of shaky" about whether he was going to support Scottsdale's case. She believed that giving him the $15,000.00 was a way to ensure his help in the future, if they could locate him.

**The Legal Malpractice Action**

Scottsdale's action for legal malpractice against Jones and H & W was filed January 25, 2000. The basis for all the allegations made in Scottsdale's Complaint is that Jones allowed Scottsdale's medical malpractice claim to prescribe when he did not file within a year of the date of McCahill's April 10, 1994 amputation, or by April 10, 1995.

**7.    Single Listing of All Uncontested Material Facts**

1.

Plaintiff, Scottsdale, is an excess and surplus lines insurance company organized under and by virtue of the laws of the State of Ohio, with its principal place of business in Scottsdale, Arizona.

2.

Defendant, Scott G. Jones, at all material times, was a counsel for Scottsdale engaged in the practice of law within the jurisdiction of this Court and a resident of the State of Louisiana.

3.

Defendant, Hulse and Wanek, PLC, at all material times, was and still is a professional law corporation organized under and by virtue of the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana.

4.

In September 1992, Van Lauren McCahill filed suit against Scottsdale and its insured, Mayer Investments, Inc. Mr. McCahill alleged in the case entitled, *Van Lauren McCahill v. Scottsdale Insurance Company, et al.*, Docket No 92-15408, division "I", Civil District Court for Orleans

-14-

Parish, that on February 29, 1992, he fractured his left leg when he fell from an apartment balcony rented by Mayer Investments.

5.

Mr. McCahill was taken to the Medical Center of Louisiana at New Orleans (hereinafter "Charity") for treatment of his left leg fracture. Mr. McCahill received treatment from Charity physicians from the date of his accident, February 29, 1992, and for the next two and one-half years.

6.

Charity physicians performed an open reduction and internal fixation on his left leg fracture, bone grafts and additional internal fixations due to the failure of the initial fixation, infection and chronic osteomyelitis. However, such treatment proved unsuccessful. On April 10, 1994, Mr. McCahill underwent an amputation of his left leg below the knee.

7.

On June 24, 1994, Scottsdale retained defendants, Scott G. Jones, Esq. and the firm of Hulse and Wanek, to defend Scottsdale and its insured against Mr. McCahill's Civil District Court personal injury case.

8.

Defendant, Scott Jones, met with Dr. Vrahas, one of Mr. McCahill's treating doctors at Charity.

9.

On July 21, 1994, Mr. Jones settled Mr. McCahill's personal injury action against Scottsdale for $600,000. Mr. Jones also raised with Mr. McCahill and his attorney the idea of pursuing a

-15-

medical malpractice case against Charity to recover Scottsdale's settlement funds Scottsdale paid him.

10.

Dr. Harvey R. Grable, a New York orthopedic surgeon, was retained to render an opinion on Mr. McCahill's treatment. Dr. Grable wrote on January 28, 1995, that Charity had engaged in significant "departures from acceptable medical care culminating in the amputation of the limb."

11.

On April 5, 1995, Scottsdale entered into a "Litigation Agreement" with Mr. McCahill regarding the prosecution of Scottsdale's medical malpractice case against Charity. Defendants Jones and Hulse and Wanek assumed the role of lead counsel.

12.

April 10, 1995, was the one-year anniversary of Mr. McCahill's left leg amputation.

13.

Instead, Defendants filed Scottsdale's Petition with the Patients Compensation Fund two days later on April 12, 1995. Defendants' Answer at para. 14.

14.

Charity is a state medical facility as defined under La. R.S. 40: 1299.39A(1)(a)(in). Medical malpractice Petitions against a state medical facility must be initially filed with the Louisiana Division of Administration. La. R.S. 40: 1299.39.1.

-16-

15.

At some point after April 10, 1995, Mr. Jones became aware that the Division of Administration, and not the PCF, was the correct body with which to file a medical malpractice Petition against Charity.

16.

On May 26, 1995, defendants re-filed Scottsdale's medical malpractice Petition against Charity before the Division of Administration.

17.

In June 1996, the State of Louisiana filed an Exception of Prescription before the 19th Judicial District Court in response to Scottsdale's medical malpractice action filed before the Division of Administration.

18.

On or about July 19, 1996, Jones filed an Opposition to the State of Louisiana's Exception of Prescription.

19.

Mr. Rick Kannally ("Kannally"), the Scottsdale adjuster appointed to the matter, was copied on a July 19,1996 letter to the Clerk of Court enclosing Scottsdale's Opposition.

20.

On July 30, 1996, Kannally made a note in Scottsdale's "Note Pad" stating:

> rec'd Memo in Opposition to Exception of Prescription. We contend
> our claim was brought w/in applicable prescriptive period.

21.

The State of Louisiana's prescription exception was not heard by the 19th Judicial District Court.

22.

On October 23, 1996, the Medical Review Panel returned a decision that there was no deviation from the standard of care by the Charity Hospital doctors.

23.

On October 31, 1996, Mr. Jones wrote Scottsdale discussing the "pros and cons" of Scottsdale's filing a medical malpractice action in Civil District Court. However, Defendant Jones did not advise Scottsdale on the likelihood Charity would file a prescription exception.

24.

On November 26, 1996, defendants filed a medical malpractice Petition on behalf of Scottsdale in Civil District Court for Orleans Parish in the matter entitled, *Van Lauren McCahill and Scottsdale Insurance Company v. The Louisiana Health Care Authority Medical Center of Louisiana at New Orleans a/k/a Charity Hospital*, Docket No. 96-20010. Exhibit I.

25.

On January 24, 1997, Mr. Jones wrote Scottsdale that he anticipated the State of Louisiana would file an Exception of Prescription in response to Scottsdale' medical malpractice petition.

26.

By correspondence dated July 21, 1997, Jones informed a new Scottsdale adjuster, Ms. Mara Gilson, that McCahill was now claiming that McCahill's treating physician, Dr. Ken Adatto, had

told him during one of his early visits that the Charity Hospital physicians did not properly set his

ankle at the time of the March 2, 1992 surgery. In addition, McCahill claimed that Dr. John Burvant,

the physician who performed the original surgical repair of McCahill's ankle, had made the

statement to McCahill several months after the initial March 2, 1992 surgery that a mistake had been

made during the surgery.

27.

On July 15, 1999, Charity filed an Exception of Prescription in Scottsdale's Civil District

Court medical malpractice action.

28.

On October 12, 1999, Jones wrote to Brezinski informing her he would be forced to withdraw

from representing McCahill and Scottsdale in light of the conflict that had arisen between them.

29.

On October 14, 1999, Jones withdrew as counsel of record for Scottsdale.

30.

On October 22, 1999, Mark Ross ("Ross") was substituted as the attorney for Scottsdale.

31.

On January 6, 2000, Ross filed an Amended Response of Scottsdale Insurance Company to

State of Louisiana's Exception of Prescription with drawing Scottsdale's Opposition to the State's

Exception of Prescription.

-19-

32.

On January 21, 2000, the State's Exception of Prescription was granted with no opposition presented by Ross on behalf of Scottsdale.

33.

On January 25, 2000, the above-captioned action for legal malpractice was filed against Jones and Hulse & Wanek, APLC.

## 8.    Single Listing of the Contested Issues of Fact

Whether Scott Jones had any rational, objective basis for believing that Mr. McCahill did not know of Charity's medical malpractice before a settlement conference of July 21, 1994.

Whether Mr. Jones did not speak to Mr. McCahill about his knowledge of Charity's medical malpractice from July 21, 1994, until some time after the filing Scottsdale's medical malpractice petition.

Whether Mr. McCahill always told Mr. Jones over the years that he had known of Charity's medical malpractice before his April 10, 1994 amputation.

Whether Mr. Jones, prior to April 10, 1995, knew of Charity's "pre-amputation" medical malpractice independently through his review of Charity's medical records and other sources.

When Mr. Jones decided to tell Scottsdale that Mr. McCahill did not know of medical malpractice until the July 21, 1994 settlement conference.

Whether Charity Hospital committed medical malpractice in its treatment of Mr. McCahill which led to his amputation of April 10, 1994.

Whether after misfiling Scottsdale's medical malpractice petition on April 12, 1995, Mr. Jones failed to tell Scottsdale anything about the misfiling until July 1996.

Whether Mr. Jones misled Scottsdale over the years through correspondence and briefs which claimed to discuss the prescription of Scottsdale's medical malpractice case, but did not actually reveal to Scottsdale the true basis of Charity Hospital's prescription exception.

Whether defendants' did not prosecute Scottsdale's medical malpractice case after filing in the Civil District Court for Orleans Parish.

Whether defendants' late and faulty filing of Scottsdale's med mal petition created a conflict of interest between Scottsdale and defendants which defendants never disclosed to Scottsdale.

Whether Mr. Jones tried to settle Scottsdale's medical malpractice case without Scottsdale's knowledge or authorization.

Whether Mr. Jones drafted an affidavit for Mr. McCahill's signature which Mr. Jones knew to be false.

Whether Mr. Jones placed Scottsdale in jeopardy of sanctions before the medical malpractice trial court if Mr. McCahill revealed his pre-amputation knowledge of Charity Hospital's medical malpractice in deposition or trial testimony.

Defendants filed Scottsdale' medical malpractice Petition before the Patients Compensation Fund (hereinafter "PCF").

Mr. Jones had never before acted as plaintiff's counsel in a medical malpractice action.

Mr. Jones cannot recall if he ever told anyone with Scottsdale that he discovered he filed Scottsdale's medical malpractice Petition before the wrong entity.

-21-

Mr. Jones never **wrote** Scottsdale that he filed Scottsdale's medical malpractice Petition with the wrong entity.

Defendants never wrote Scottsdale that they **intended** to file Scottsdale's medical malpractice Petition on April 10, 1995, but did not do so until April 12, 1995.

Defendants never advised Scottsdale that it should consider seeking separate counsel.

On February 17, 1999, Jones wrote to Ken Fulgenzi, the next Scottsdale adjuster, to advise him of McCahill's repeated requests that the matter be settled for the amount of the medicals, or approximately $38,000.00. Jones recommended settling for this amount "[i]n light of Mr. McCahill's questionable character ... ." Brezinski, the next Scottsdale adjuster, rejected this recommendation.

Mr. Jones advised Scottsdale that Charity's anticipated prescription exception was "ridiculous."

On July 21, 1997, Mr. Jones wrote Scottsdale that Mr. McCahill recalled that a treating physician, Dr. Ken Adatto, "frankly told him," that Charity Hospital did not properly fixate his ankle during the original surgery prior to the amputation of his left leg.

On December 5, 1997, Mr. Jones wrote Scottsdale that Mr. McCahill recalled Dr. Adatto and the original treating surgeon, Dr. John Burvant, told Mr. McCahill that Charity did not provide him proper medical treatment prior to his amputation.

On February 17, 1999, Mr. Jones wrote Scottsdale that given Mr. McCahill's "questionable character," Scottsdale should settle its $600,000 medical malpractice claim for $38,000.

-22-

On February 17, 1999, Mr. Jones also wrote counsel for Charity that Mr. McCahill authorized him to settle the medical malpractice case, "for a return of the medical bills which he paid," or $38,000.

On August 9, 1999, Mr. Jones wrote Scottsdale's recovery specialist, Ms. Beth Brezinski, that Charity had filed an Exception of Prescription.

On September 8, 1999, Mr. Jones wrote Scottsdale's Ms. Brezinski that "[T]o my surprise," Mr. McCahill "admitted" he was aware very early on that he had not received adequate medical care at Charity.

On the same day, September 8, 1999, Mr. Jones wrote Mr. McCahill recounting that Mr. McCahill had told Mr. Jones on several occasions that Mr. McCahill had been made aware, shortly after his first surgery, that the surgery was done in an improper fashion.

On September 22, 1999, defendants filed a Memorandum in Opposition to the State's Exception of Prescription. Defendants told the trial court that Mr. McCahill knew nothing of Charity's medical malpractice until informed by Mr. Jones on July 21, 1994.

On or about September 22, 1999, Mr. Jones drove to Mr. McCahill's home and asked him to sign an Affidavit which denied that Mr. McCahill knew of any medical malpractice before the July 21, 1994 settlement conference.

Mr. McCahill has testified in deposition that the Affidavit Mr. Jones had him sign is inaccurate.

On October 12, 1999, Mr. Jones wrote Scottsdale that Mr. McCahill wanted to accept a pending $15,000 settlement offer from Charity. Mr. Jones also reported he had a conflict between his representation of Mr. McCahill and Scottsdale and therefore withdrew as Scottsdale's counsel.

Mr. Jones contends he never had a conflict of interest representing Scottsdale because the State of Louisiana's prescription exception was without merit.

## 9.    Single Listing of Contested Issues of Law

Whether defendants' failure to speak with Mr. McCahill after the settlement conference of July 21, 1994 and before the filing of Scottsdale's medical malpractice petition was malpractice.

Whether defendants' failure to timely file Scottsdale's medical malpractice petition timely on or before April 10, 1995 and before the correct entity is malpractice.

Whether defendants had to tell Scottsdale that they filed it medical malpractice petition too late and before the wrong entity.

Whether defendants had to tell Scottsdale of their misfiling of its medical malpractice petition since an objectively reasonable attorney would conclude that such misfiling would result in serious prejudice to Scottsdale's interests.

Whether defendants' failure to tell Scottsdale that they had failed to timely file its petition before the correct entity violated Rules 1.3, 1.4 and 1.8 of the Rules of Professional Conduct.

Whether defendants' failure to tell Scottsdale that they failed to timely file its petition too late and before the wrong entity constitutes fraud.

Whether after filing Scottsdale's petition on April 12, 1995, defendants had to advise Scottsdale to retain separate counsel under Rule of Professional Conduct 1.7.

Whether defendants' failure between April 12, 1995 and July 19, 1996 to tell Scottsdale that a prescription issue existed in its case constituted fraud and violated Rules of Professional Conduct 1.4 and 8.4.

Whether mailing Scottsdale on July 19, 1996 a copy of defendants' opposition brief to Charity's prescription exception constitute fraud and violated Rules of Professional Conduct 1.4 and 8.4

Whether mailing Scottsdale correspondence which purported to discuss the prescription issue but which never revealed the true factual basis for the issues constitutes fraud in violation of the Rules of Professional Conduct.

Whether defendants failure to timely and correctly file Scottsdale's med mal petition placed defendants in a conflict with Scottsdale that defendants had to reveal to Scottsdale.

Whether defendants attempted to settle Scottsdale's case without its authorization and/or knowledge in violation of Rule 1.4 of the Rules of Professional Conduct.

Whether the credibility of a witness is not to be considered when that witness offers testimony, in this case that of Mr. Jones, that he supposedly believed that Mr. McCahill did not know of medical malpractice before his amputation, when that testimony is so contradicted by documentary and other objective evidence or is so transparently incredible that it cannot be accepted.

Whether the knowledge of Mr. McCahill's counsel in the medical malpractice case, Mr. Jones, that Charity had committed malpractice before Mr. McCahill's amputation, is imputed to his client, Mr. McCahill.

Whether Scottsdale's medical malpractice petition prescribed on its face.

-25-

Whether an issue of material fact can exist as a matter of law when a proponent of one position cannot produce any testimonial, documentary or other objective evidence to support that position.

Whether the defendants' filing of a false affidavit into the medical malpractice trial court is legal malpractice in violation of Rules 4.1 and 8.4.

Whether the defendants committed legal malpractice by subjecting Scottsdale to the risk of civil and criminal sanctions through the filing of the McCahill affidavit dated September 22, 1999.

Whether prescription of the underlying medical malpractice case can begin running before the allegedly injured party suffers damages, in this case Mr. McCahill's amputation.

Whether once plaintiff establishes a prima facie case of legal malpractice, the burden shifts to defendants to show that the underlying med mal case could not have succeeded.

Whether defendants' written opinion to plaintiff that the underlying med mal case had a 70% chance of success estops defendants from contradicting their prior opinion.

Whether Scottsdale's medical malpractice claim prescribed.

If Scottsdale's medical malpractice claim prescribed, when did prescription begin to run?

Did Scottsdale fail to mitigate its damages by failing to offer any opposition to the State of Louisiana's exception of prescription?

Is Scottsdale's legal malpractice claim perempted by the application of La. R.S. 9:5605?

Was there any value to the underlying medical malpractice claim?

Whether Scottsdale has made a prima facie case of negligence thereby shifting the burden of proof to the defendants.

-26-

How much, if at all, was Scottsdale damaged?

**10.    Exhibits to be Introduced at Trial**

    a.  Plaintiff (Defendants' Objections are attached in Addendum A hereto.)

1.      Exhibits A-T to Complaint of Scottsdale Insurance.

2.      Exhibits A through CC of Scottsdale Insurance Company's Motion for Summary Judgment.

3.      Report of Dr. Frank L. Barnes dated November 1, 2000.

4.      Letter from Ms. Deborah Gildner to Ms. Judy Suhr dated June 14, 1994.

5.      Handwritten memo from Judy Suhr to Jean Nelson dated 6/14/94.

6.      Dr. Harvey Grable reports of February 23 and May 15, 1995.

7.      Receipt and Release and Indemnity Agreement dated July 21, 1994 between Scottsdale Insurance and Van Lauren McCahill.

8.      Litigation Agreement dated April 5, 1995.

9.      Medical malpractice Petition filed by Scott Jones before the Patient's Compensation Board on April 12, 1995.

10.     Letter from Scott Jones and enclosed Petition to Mr. Raymond Laborde, Commissioner of Administration, dated May 26, 1995.

11.     Petition filed by Scott Jones in Civil District Court in Docket No. 96-20010.

12.     Letter from Scott Jones to Rick Kannally dated January 24, 1997.

13.     Letter from Scott Jones to Maria Gilson dated July 21, 1997.

14.     Letter from Scott Jones to Ken Fulgenzi dated December 5, 1997.

15.     Letter from Scott Jones to Ken Fulgenzi dated February 17, 1999.

16.    Letter from Beth Brezinski to Scott Jones dated March 3, 1999.

17.    Letter from Scott Jones to Barry Toups dated February 17, 1999.

18.    Barry Toups cover letter and Exception of Prescription dated July 15, 1999.

19.    Scott Jones letter to beth Brezinski dated August 9, 1999.

20.    Scott Jones letter to beth Brezinski dated September 8, 1999.

21.    Memorandum In Opposition to Exception of Prescription filed by Scott Jones and dated September 21, 1999 and attachments.

22.    Affidavit of Van Lauren McCahill dated September 22, 1999.

23.    Any and all pleadings filed by either party to this proceeding.

24.    Defendant's Responses to Plaintiff's Requests for Admissions.

25.    Deposition of Scott Jones taken on May 11, 2000 and attached exhibits.

26.    Letter from Scott Jones to Judy Suhr dated June 28, 1994.

27.    Letter from Scott Jones to Judy Suhr dated July 25, 1994.

28.    Fax from Judy Suhr to Scott Jones dated January 12, 1995.

29.    Fax from Scott Jones and accompanying letter to Judy Suhr dated January 17, 1995.

30.    Letter from Scott Jones to Cheryl Jackson, Patient's Compensation Fund, dated April 6, 1995.

31.    Letter from Cheryl Jackson to Scott Jones dated April 26, 1995.

32.    Letter from Cheryl Jackson to Scott Jones dated May 5, 1995.

33.    Letter from H. Martin Hunley, Jr. to Scott Jones dated May 19, 1995.

34.    Fee bill and cover letter from Scott Jones and Hulse and Wanek to Mr. Rick Kannally of Scottsdale Insurance dated September 20, 1996.

35.    Letter from Scott Jones to Rick Kannally dated October 31, 1996.

36.    Letter from Scott Jones to Barry Toups dated May 11, 1999.

37.    Letter from Scott Jones to Beth Brezinski dated October 12, 1999.

38.    Letter from Scott Jones to Deborah Gildener dated February 6, 1995.

39.    Sworn statement of Van Lauren McCahill dated January 21, 2000.

40.    Letter from Scott Jones to Judith Suhr dated April 11, 1995.

41.    Deposition of Ms. Beth Brezinski dated May 11, 2000.

42.    Receipt, Release and Assignment of Rights between Scottsdale Insurance and Van Lauren McCahill.

43.    Letter from Scott Jones to Clerk of Court, 19th JDC, enclosing Memorandum in Opposition to Exception of Prescription, dated July 19, 1996.

44.    Affidavit of Mr. Rick Kannally dated June 6, 2000.

45.    Letter from Scot Jones to Rick Kannally dated May 14, 1996.

46.    Medical records of Charity Hospital/Medical Center of Louisiana at New Orleans relating to fractured leg treatment and amputation of leg of Van Lauren McCahill beginning February 28, 1992.

47.    Letter to Judy Suhr from Scott Jones dated July 14, 1994.

48.    Dr. Frank Barnes report of November 1, 2000 and C.V.

49. Deposition of Van Lauren McCahill taken on January 11, 1993 in CDC Docket No. 92-15408.

50. Scott Jones letter to Van Lauren McCahill dated September 8, 1999.

51. Scott Jones letter to Michael Hingle dated May 9, 1995.

52. "Notepad" notes taken from the Scottsdale claims examiners computer files in the underlying med mal case.

53. Deposition of Scott Jones taken on May 11, 2000 and attached exhibits.

54. Letter from Nahum Laventhal, Esq. to Ms. Judy Suhr dated June 14, 1994 and enclosures.

55. Letter from Nahum Laventhal, Esq. to Ms. Judy Suhr dated June 7, 1994 and enclosure.

56. Letter from Scott Jones to Van Lauren mcCahill dated July 19, 1996.

57. Letter from Scott Jones to Clerk of Court, 19th JDC, dated July 19, 1996.

58. Letter from Scott Jones to Judy Suhr dated April 25, 1996.

59. Letter from Scott Jones to Judy Suhr dated November 10, 1995.

60. Letter from Scott Jones to Ms. Judith Suhr dated April 11, 1995.

61. Letter from Scott Jones to Deborah Gildener dated February 6, 1995.

62. Letter from Scott Jones to Michael Hingle dated July 14, 1994.

63. Letter from Beth Brezinski to Scott Jones of March 3, 1999.

64. Letter from Barry Toups to Scott Jones dated September 23, 1999.

65. Letter from Scott Jones to Van Lauren McCahill dated September 23, 1999.

66. Letter from Barry Toups to Scott Jones dated August 19, 1999.

67. Letter from Barry Toups to Scott Jones of May 18, 1999.

68.    Fax from Scott Jones to Cheryl Jackson of Patients' Compensation Fund dated April 11, 995.

69.    State of Louisiana's Exception of Prescription and attached Exhibits filed July 15, 1999.

70.    Any document produced by either party in discovery.

71.    Any document either listed or sought to be introduced into evidence by defendants.

　　　　b. Defendants

1.    09/92    Petition for Damages in the matter entitled "*Van Lauren McCahill v. Scottsdale Insurance Company, et al*," No. 92-15408 on the docket of the Civil District Court, Parish of Orleans, State of Louisiana.

2.    03/02/93    Report by Cedor and Company to Nahum D. Laventhal.

3.    06/24/94    Letter from Scott Jones to Michael Hingle and Barbara Bourdonnay.

4.    06/28/94    Letter from Scott Jones to Judith Suhr.

5.    07/21/94    Receipt & Release with Indemnity Agreement.

6.    07/25/94    Letter from Scott Jones to Judith Suhr.

7.    01/17/95    Letter from Scott Jones to Judith Suhr.

8.    04/05/95    Litigation Agreement.

9.    05/26/95    Letter from Scott Jones to Mr. Raymond Laborde, Commissioner of Administration (Medical Review Panel).

10.    06/06/95    Letter from Raymond J. Laborde, Commissioner of Administration to Scott Jones.

11.    05/07/96    Fax transmittal form from Rick Kannally to Scott Jones.

12.    06/28/96    Exception of Prescription filed in the matter "*In Re: Medical Review Panel for the claim of Van Lauren McCahill,*" No. 417733 on the docket of the 19th Judicial District Court for the Parish of East Baton Rouge.

13.    07/19/96    Letter from Scott Jones to Michael Hingle and Van McCahill.

14.    07/19/96    Letter from Scott Jones to Clerk of Court, 19th JDC, with blind carbon copy to Rick Kannally.

15.    07/19/96    Memorandum in Opposition to Exception of Prescription.

16.    07/24/96    Letter from Sydney Picou-Kendrick to Honorable Robert D. Downing, Judge, 19th Judicial District Court.

17.    07/27/96    Letter from Scott Jones to Rick Kannally.

18.    10/22/96    Letter from Sydney Picou-Kendrick to Scott Jones.

19.    10/23/996    Letter from John R. Wellman to Scott Jones and Sydney Picou-Kendrick submitting Medical Review Panel Opinion and Reasons.

20.    10/31/96    Letter from Scott Jones to Rick Kannally.

21.    11/27/96    Petition filed in the matter entitled "*Van Lauren McCahill and Scottsdale Insurance Company v. the Louisiana Healthcare Authority Medical Center of Louisiana at New Orleans, a/k/a Charity Hospital of New Orleans,*" No. 96-20010 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana.

22.    01/24/97    Letter from Scott Jones to Rick Kannally.

23.    02/24/97    Letter from Scott Jones to Rick Kannally.

| | | |
|---|---|---|
| 24. | 07/21/97 | Letter from Scott Jones to Mara Gilson. |
| 25. | 12/05/97 | Letter from Scott Jones to Ken Fulgenzi. |
| 26. | 12/28/98 | Notepad entries for December 1997 and January 1998. |
| 27. | 02/17/99 | Letter from Scott Jones to Ken Fulgenzi. |
| 28. | 07/15/99 | Exception of Prescription by Charity Hospital. |
| 29. | 08/09/99 | Letter from Scott Jones to Beth Brezinski. |
| 30. | 09/08/99 | Letter from Scott Jones to Van McCahill. |
| 31. | 09/08/99 | Letter from Scott Jones to Beth Brezinski. |
| 32. | 09/21/99 | Memorandum in Opposition to Exception of Prescription. |
| 33. | 09/22/99 | Affidavit of Van McCahill. |
| 34. | 09/23/99 | Letter from Scott Jones to Van McCahill. |
| 35. | 10/12/99 | Letter from Scott Jones to Beth Brezinski. |
| 36. | 10/22/99 | Motion to Substitute Counsel of Record for Scottsdale Insurance Company. |
| 37. | 12/14/99 | E-mail from Mark Ross to Patrick Dunn. |
| 38. | 12/27/99 | Letter from Mark Ross to Scott Jones. |
| 39. | 01/05/00 | Letter from John Stewart to Mark Ross. |
| 40. | 01/05/00 | Letter from Mark Ross to John Stewart. |
| 41. | 01/05/00 | Letter from John Stewart to Mark Ross (second letter). |
| 42. | 01/06/00 | Amended Response of Scottsdale Insurance Company to Exception of Prescription. |
| 43. | 01/12/00 | Motion and Order to Re-Set Exception of Prescription. |

44.  01/18/00   Letter from Mark Ross to Barry Toups and Patrick Dunn, along with proposed Receipt, Release and Assignment of Rights.

45.  01/21/00   Transcript of proceedings.

46.  01/21/00   Judgment.

47.  01/21/00   Receipt, Release and Assignment of Rights.

48.  01/21/00   Motion and Order of Voluntary Dismissal.

49.  05/10/00   Printout of computer notepad (entries from 4/11/96).

50.  Medical Review Panel submissions.

     a.  Submission on behalf of Van McCahill

     b.  Submission on behalf of Charity Hospital.

51.  Medical Records for treatment of Van McCahill.

52.  Deposition transcripts from underlying litigation, including but not limited to:

     a.  January 11, 1993 deposition of Van Lauren McCahill; and

     b.  May 2, 1994 deposition of Dr. Kenneth Adatto.

53.  Deposition of Beth Brezinski, May 11, 2000.

54.  All documents produced in this litigation.

55.  All documents identified by other parties to this proceeding.

**11.  Deposition Testimony to be Offered Into Evidence**

a.  Plaintiff

Scottsdale Insurance does not intend to introduce any deposition testimony into trial at this time.

b.  Defendants

Defendants do not intend to offer any deposition testimony into evidence at the trial of this

matter at this time.

**12.    Demonstrative Evidence to be Used at Trial**

a.  Plaintiff intends to use blow-ups of correspondence in opening statement, closing

argument and cross-examination.

b.  Defendants do not intend to use any demonstrative evidence in opening statements or

closing argument.

**13.    Witnesses for All Parties**

a.      Scott G. Jones, Esq.
        Hulse and Wanek, PLC
        1010 Common Street, Suite 2800
        New Orleans, LA 70112-2401

Will testify regarding his representation of Scottsdale Insurance Company in the underlying

medical malpractice matter and all matters discussed in his deposition.

        John A. Stewart, Jr., Esq.
        Hulse & Wanek, PLC
        1010 Common Street, Suite 2800
        New Orleans, Louisiana 70113

Will testify as a representative of Hulse & Wanek, PLC, and his January 2000

correspondence with Mark. L. Ross.

        Van Lauren McCahill
        29655 Livingston Ave.
        Albany, LA  70711

Will testify regarding the allegations of Charity Hospital's medical malpractice, defendants' representation of him in the medical malpractice matter, conversations with defendant Scott Jones, the affidavit submitted in opposition to the State of Louisiana's Exception of Prescription in the medical malpractice matter and all matters discussed in his deposition.

> Mark L. Ross, Esq.
> 600 Jefferson Street
> Box 23 Suite 501
> Lafayette, Louisiana 70501

Will testify regarding his representation of Scottsdale Insurance Company and the withdrawal of Scottsdale's Opposition to the State of Louisiana's Exception of Prescription in the underlying medical malpractice matter.

> Pat Dunn, Esq.
> 125 East Pine Street
> P.O. Drawer 1980
> Ponchatoula, LA  70454

May testify regarding his representation of Van McCahill in the settlement of the underlying medical malpractice matter and the subsequently executed Receipt, Release and Assignment of Rights.

> J. Monroe LaBorde, MD
> 3525 Prytania Street, Suite 402
> New Orleans, LA 70115

Will testify as defendants' medical expert regarding the cause(s) leading to the amputation of Van McCahill's lower left leg.

Ms. Beth Brezinski
Scottsdale Insurance Company
P.O. Box 4120
Scottsdale, AZ  85261-4120

May testify as the representative of Scottsdale Insurance Company and her supervision of

Scottsdale's medical malpractice case, discussions with Scott Jones about settlement authority and

strategy and all matters discussed in her Rule 30(b)(6) deposition.

Barry Toups, Esq.
Assistant Attorney General, State of Louisiana
Department of Justice
Litigation Division
Baton Rouge, LA 70804-9095

May testify on his investigation and findings as counsel for the State of Louisiana/Charity

Hospital regarding the alleged prescription of Scottsdale's medical malpractice case, settlement

negotiations and the resolution of the underlying medical malpractice matter.

Michael Hingle, Esq.
201 St. Charles Ave., Suite 2521
New Orleans, LA 70170

May testify on his representation of Van McCahill and discussions with Scott Jones.

Ken Adatto, MD
3715 Prytania Street, Suite 501
New Orleans, LA

May testify regarding the facts surrounding his treatment of Van McCahill and assertions that

he advised Van McCahill that there were deviations below the standard of care by the Charity

Hospital physicians.

-37-

John Burvant, MD
3939 Houma Blvd.
Doctor's Row, No. 21
Metairie, LA 70006

May testify regarding the facts surrounding his treatment of Van McCahill and assertions that

he advised Van McCahill that there were deviations below the standard of care by the Charity

Hospital physicians.

Mark Vrahas, MD
2025 Gravier Street, Suite 400
New Orleans, LA 70112

May testify regarding his treatment and supervision of treatment of Van McCahill at Charity

Hospital and statements made to Scott Jones regarding such treatment.

Nahum Laventhal, Esq.
Augustin & Laventhal
3421 N. Causeway Blvd., Suite 801
P. O. Box 7033
Metairie, LA 70010-7033

May testify on his representation of Scottsdale Insurance Company in the defense of Van

Lauren McCahill's original personal injury suit.

Ms. Deborah Gildener
American International Health and Rehabilitation Services
5 West Main Street, Ste. 205
Elmsford, N.Y. 10523-2416

May testify on her assessment of Charity Hospital's treatment of Mr. McCahill.

Rick Kannally
5054 East Mazatzal Drive
Cave Creek, AZ 85331

May testify regarding his handling of the underlying medical malpractice claim as a claims handler for Scottsdale Insurance Company.

> Ken Fulgenzi
> Scottsdale Insurance Company
> P.O. Box 4120
> Scottsdale, AZ 85261-4120

May testify on his supervision of the Scottsdale medical malpractice case as a claims handler for Scottsdale Insurance Company.

> Dr. Harvey Grable
> 60 Plaza Street
> Brooklyn, N.Y. 11238

May testify as plaintiff's expert witness on the quality of care rendered to Van McCahill by Charity Hospital and all matters discussed in his report.

> H. Martin Hunley, Jr., Esq.
> Lemle & Kelleher
> 601 Poydras St., Ste 2100
> New Orleans, LA 70130

May testify regarding his defense of the medical malpractice claim made against Dr. Kenneth Adatto in the underlying matter.

> Dr. Frank L. Barnes
> 4126 Southwest Freeway, Ste. 1410
> Houston, TX 77027

May testify as plaintiff's expert medical witness on the quality of the medical treatment Charity Hospital rendered to Van McCahill and all matters discussed in his report of November 1, 2000.

Judy Suhr
5062 E. Roy Rogers Rd.
Cave Creek, AZ  85331

May testify on her supervision of the original Van McCahill personal injury suit, Scottsdale's retention of defendants as counsel, Scottsdale's investigation and decision to pursue a medical malpractice case against Charity Hospital and her conversations and correspondence with defendants in underlying personal injury matter and the underlying medical malpractice matter.

Mara Gilson
Scottsdale Insurance Company
P.O. Box 4120
Scottsdale, AZ  85261-4120

May testify on her supervision of the Scottsdale medical malpractice case.

b.     The witness list of plaintiff, Scottsdale Insurance Company, was filed in accordance with prior Court orders.  Scottsdale Insurance Company has filed a Motion in Limine seeking to preclude defendants' witness list, in particular defendants' list of expert witness, on the ground that they have not been filed in accordance with the Court's prior orders.  The hearing on Plaintiff's Motion in Limine to Preclude Defendants from Submitting Expert Medical Testimony is set for January 31, 2001.

Defendants' witness list was filed in accordance with this Court's prior order dated May 25, 2000.  Defendants' expert witness report was exchanged in accordance with this Court's prior order dated May 25, 2000.

Defendants have filed a Motion to Strike moving for an order striking Mr. Rick Kannally from Plaintiff's Witness List to testify at trial and prohibiting Plaintiff from using Mr. Kannally's

previously submitted Affidavit in the prosecution of above-captioned matter. The hearing on Defendants' Motion to Strike is set for January 31, 2001.

**14.    Statement Indicating Jury or Non-Jury Case**

This is a non-jury case.

**15.     Trial of Liability and Quantum**

The issue of liability (will or will not) be tried separately from that of quantum.

**16.    Matters That Might Expedite a Disposition of the Case**

A judgment by the Court on the Motions set to be heard January 31, 2000 may expedite a disposition of this matter. (*See*, No. 5 above, **Pending and/or Contemplated Pre-Trial Motions**).

**17.    Trial Date**

The trial shall commence on February 12, 2001 at 9:00a.m. The trial is estimated to last three (3) days.

**18.    Statement Regarding Formulation of Pre-Trial Order**

This Pre Trial Order has been formulated after conference at which counsel for the representative parties had appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**19.    Statement Regarding Settlement Attempts**

The possibility of settlement of this case was considered. The parties participated in a settlement conference before Magistrate Judge Sally Shushan on January 30, 2001.

MARK L. ROSS, Bar No. 11477
600 Jefferson Street, Ste 501
Lafayette, Louisiana  70501
Telephone: (337) 266-2345
Facsimile: (337) 266-2163
Attorney for Plaintiff Scottsdale Insurance Company


WILLIAM E. WRIGHT, JR.  (#8564)
MARGARET L. SUNKEL (#25888)
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine St.
New Orleans, Louisiana  70130-3672
Telephone:  (504) 581-5141
Attorneys for Scott G. Jones and Hulse
          & Wanek, PLC


HONORABLE MARTIN L.C. FELDMAN
Judge, United States District Court,
Eastern District of Lousiana
C555 U. S. Courthouse
500 Camp St.
New Orleans, Louisiana 70130

-42-

## ADDENDUM "A"

Defendants state the following objections to exhibits identified by plaintiff, Scottsdale Insurance Company:

1. Defendants object to an *in globo* exhibit containing multiple documents, most of which are included elsewhere in Scottsdale's Exhibit List. Subject to this objection, defendants state the following specific objections:

  A. Defendants object on the basis of Rule 802, hearsay.

  B. Defendants object on the basis of Rule 802, hearsay.

  C. Defendants object on the basis of Rule 802, hearsay.

  E. Defendants object on the basis of Rule 802, hearsay.

2. Defendants object to an *in globo* exhibit containing multiple documents, most of which are included elsewhere in Scottsdale's Exhibit List. Subject to this objection, Defendants state the following specific objections:

  A. Defendants object on the basis of Rule 802, hearsay.

  B. Defendants object on the basis of Rule 802, hearsay.

  C. Defendants object on the basis of Rule 802, hearsay.

  E. Defendants object on the basis of Rule 802, hearsay.

  V. Defendants object to the use of the deposition of Scott G. Jones for any purposes other than those which are allowed under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

X.   Defendants object to the use of a sworn statement on the basis of Rule 802, hearsay.

Z.   Defendants object to the use of the deposition of Beth A. Brezinski for any purposes other than those which are allowed under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

Z.1  Defendants object to the use of the Affidavit of Ms. Beth Brezinski on the basis of hearsay, Rule 802.

aa.  Defendants object to the use of the Affidavit of Rick H. Kannally on the basis of hearsay, Rule 802.


3.   Defendants object on the basis of hearsay, Rule 802.

4.   Defendants object on the basis of hearsay, Rule 802.

5.   Defendants object on the basis of hearsay, Rule 802.

6.   Defendants object on the basis of hearsay, Rule 802.

23.  Defendants object on the basis of relevancy, Rule 402 and hearsay, Rule 802.

25.  Defendants object to the use of the deposition of Scott G. Jones for any purposes other than those which are allowed under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

39.  Defendants object to the use of a sworn statement on the basis of Rule 802, hearsay.

48.  Defendants object on the basis of hearsay, Rule 802.

49.    Defendants object to the use of the deposition of Van Lauren McCahill for any purposes other than those which are allowed under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

73.    Defendants object on the basis of hearsay, Rule 802.